**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 15-cv-22405-GAYLES**

**MT. HAWLEY INSURANCE COMPANY,**
　　　　　　　　　**Plaintiff,**

　　　**and**

**THE NORTH RIVER INSURANCE
COMPANY,**
　　　　　　　　　**Plaintiff-Intervenor,**

　　　　　**v.**

**MIAMI RIVER PORT TERMINAL, LLC;
WILSON AUGUSTAVE; and DESELYN
JOSEPH,**
　　　　　　　　　**Defendants.**
_____/

**MIAMI RIVER PORT TERMINAL, LLC,**
　　　　　　　　**Counter-plaintiff,**

　　　　　**v.**

**MT. HAWLEY INSURANCE COMPANY,**
　　　　　　　　**Counter-defendant.**
_____/

<u>**ORDER**</u>

**THIS CAUSE** comes before the Court on the following motions:

(1)　Plaintiff/Counter-defendant Mt. Hawley Insurance Company's ("Mt. Hawley") Motion
for Summary Judgment [ECF No. 37];[1]

(2)　Plaintiff-Intervenor North River Insurance Company's ("North River") Motion for
Summary Judgment [ECF No. 62];

(3)　Defendant/Counter-plaintiff Miami River Port Terminal, LLC's ("MRPT") Motion

---

[1]　Adopted by Plaintiff-Intervenor North River Insurance Company [ECF No. 62].

for Summary Judgment [ECF No. 95];[2]

    (4)    Mt. Hawley's Motion for Summary Judgment on MRPT's Counterclaims [ECF No. 97]; and

    (5)    MRPT's Motion for Continuance or Stay [ECF No. 76].

The Court has carefully considered the parties' submissions, the record in this case, and the applicable law and is otherwise fully advised in the premises.

    Mt. Hawley, an insurance company, filed this coverage dispute seeking a declaration that it has no duty to defend and no duty to indemnify MRPT in a negligence action in state court brought by Defendant Wilson Augustave, who suffered injuries while working on property owned by MRPT. North River, as an excess liability insurer, intervened. In its counterclaim against Mt. Hawley, MRPT alleges that Mt. Hawley breached its contract by failing to immediately defend it in that state court suit and requests that this Court reform the insurance policy that is the subject of this case. For the reasons that follow, the Court finds that Mt. Hawley (and, accordingly, North River) has no duty to defend and no duty to indemnify and that reformation of the insurance policy is inappropriate. As a result, Mt. Hawley's two motions for summary judgment shall be granted, North River's motion for summary judgment shall be granted, and MRPT's motion for summary judgment and motion for continuance or stay shall be denied.

## I.    BACKGROUND

    This action arises from injuries suffered by Defendant Augustave on September 17, 2013, and the subsequent action filed by Augustave and his wife, Defendant Deselyn Joseph, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, against Defendant MRPT and P&L Cargo Services, Inc. (which is not a party to this action) (the "Underlying Action").

---

[2]    Adopted by Defendants Wilson Augustave and Deselyn Joseph [ECF No. 99].

A.    *Factual History*

1.    **Allegations in the Underlying Complaint**

In the amended complaint in the Underlying Action, Augustave alleges that P&L and MRPT "operated a joint venture to import and/or export goods to and from Haiti." [ECF No. 1-6 ¶ 16] (the "Underlying Complaint"). According to his allegations, on the date of the incident, Augustave was performing work at 3300 N.W. North River Drive, Miami, Florida, 33142—the property owned by MRPT and being run by P&L and MRPT. *Id.* ¶ 10. A cargo vessel *Sylvie* was moored at the wharf on the Miami River at that address, which was also the principal office of P&L and MRPT. P&L and MRPT agreed to provide labor and assist the *Sylvie* in supervising the loading and unloading of containers from the ship to the dock. *Id.* ¶ 12. An "employee and/or agent of [P&L and MRPT], acting in the scope of his/her employment with [P&L and MRPT], negligently instructed [Augustave] to maneuver cargo and caused [him] severe personal injury resulting in paralysis." *Id.* ¶ 15. Augustave and Wilson filed suit in state court on January 22, 2014, asserting claims for negligence and loss of consortium against P&L and MRPT.

2.    **Insurance Policies Obtained by Raul and Lucrecia Gonzalez**

On March 23, 2010, Lucrecia Gonzalez sent an email to insurance agency Collinsworth, Alter, Fowler & French Group, Inc. ("CAFF"). The email concerned MRPT, a limited liability company of which she and her husband Raul Gonzalez were managing members and that they had formed on March 15, 2010, for the purpose of acquiring the real property located at 3300 N.W. North River Drive in Miami. In the email, Mrs. Gonzalez advised that she and her husband expected to close on that property on March 30, 2010. On that date, Mrs. Gonzalez sent another email to CAFF, in which she asked CAFF to "provide liability/umbrella coverage for the new property at Miami River Port Terminal, LLC." [ECF No. 93-3 at 2].

CAFF obtained for the Gonzalezes a commercial general liability policy from XL/Indian

Harbor Insurance Company. The policy identified various persons and entities as "named insureds," but did not include MRPT, contrary to Mrs. Gonzalez's instructions to CAFF, though neither Mrs. Gonzalez nor CAFF noticed the omission. However, the then-existing commercial general liability insurance policy which CAFF had obtained for the Gonzalezes, issued by Essex Insurance Company, was amended on April 23, 2010, to add "Miami River Port Terminal, 3300 NW N River Drive, Miami, FL 33142" to the policy's schedule. [ECF No. 105-1].

In anticipation of procuring insurance for the period from December 1, 2010, through December 1, 2011, CAFF prepared a schedule of insurance for the Gonzalezes, which described, among other things, the existing insurance. MRPT was not listed among the named insureds on the schedule. [ECF No. 96-1 at 12-13, 15; ECF No. 96-3 at 3]. The insurance application form to procure insurance for this 2010–11 policy period did not list MRPT among the entities to be insured. [ECF No. 96-1 at 16]. The insurance policy for this period did not list MRPT as an insured entity. [ECF No. 93-1 at 2].

In anticipation of procuring insurance for the period from December 1, 2011, to December 1, 2012, CAFF again prepared a schedule of insurance for the Gonzalezes. MRPT was not listed among the named insureds on this schedule, as well. [ECF No. 96-1 at 17-19; ECF No. 96-4 at 3]. The insurance application form to procure insurance for this 2011–12 policy period did not list MRPT as among the entities to be insured. [ECF No. 96-4]. The insurance policy for this period was issued by Mt. Hawley. It did not list MRPT as a "named insured," but it did identify the location "3300-3334 NW N River Drive, Miami, FL" as a covered location. [ECF No. 96-5 at 4-5].

Around this time, the Gonzaleses were advised that Mt. Hawley wished to conduct an inspection of the premises at 3300 N.W. North River Drive. The inspection was performed on January 6, 2012, by a representative of RRI, a company retained by Mt. Hawley. The inspection report identified "Raul and Lucrecia Gonzalez dba Okeechobee Apts" as the insured. [ECF No.

93-6 at 2]. The report states that the inspector met with "Ryan Gonzalez, the Owner who informed him that "Raul and Lucrecia Gonzalez are the property owners." [*Id.*]. MRPT argues that Ryan Gonzalez is not a member of the Raul and Lucrecia Gonzalez's family or an employee of their family's companies, but rather an employee of P&L who served as a security guard. [ECF No. 94 ¶ 10].

### 3.   The Subject Policies

In anticipation of procuring insurance for the period from December 1, 2012, to December 1, 2013 (the time during which Augustave's injury occurred), CAFF again prepared a schedule of insurance, and MRPT was again not listed as a named insured. The insurance application form to procure insurance for this 2012–13 policy period did not list MRPT as among the entities to be insured, but listed as a location "Miami River Port Terminal." [ECF No. 98 ¶ 12; ECF No. 105 ¶ 12].

The policy that is the subject of this action, for the December 1, 2012, through December 1, 2013, time period, Policy No. MGL0178574, was issued by Mt. Hawley to named insured "Raul and Lucretia Gonzalez dba Okeechobee Apts (See Schedule)," [ECF No. 1-5] (the "Policy"). The declarations page of the Policy identified the "Form of Business" as "Organization (Other than Partnership, *Joint Venture*, or Limited Liability Company." Policy at 2 (emphasis added). The Named Insured and Location Supplementary Schedule that accompanied the Policy listed a number of named insureds and covered locations; "Miami River Port Terminal, Miami, FL" is identified as a "Covered Location" but does not appear in the list of "Named Insureds." *Id.* at 55-56.

With respect to the coverage provided for bodily injury and property damage, the Policy states:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE**

**1.**      **Insuring Agreement**

      **a.**      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

*Id.* at 6. With respect to who is an insured for coverage for bodily injury, the Policy states:

**SECTION II – WHO IS AN INSURED**

1.      If you are designated in the Declarations as: . . .

      b.      A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business. . . .

      d.      An organization other than partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers and directors. Your stockholders are also insureds, but only with respect to their liability as stockholders. . . .

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company ***that is not shown as a Named Insured in the Declarations***.

*Id.* at 14-15 (emphasis added). No joint venture is listed as a Named Insured in the Policy's Declarations.

Plaintiff-Intervenor North River Insurance Company issued a policy of excess liability coverage to named insureds Raul and Lucrecia Gonzalez with limits of $15 million for the policy period December 1, 2012, through December 1, 2013 (the "North River Policy"). When applicable, the North River Policy provides excess liability coverage over and above underlying primary liability coverage provided by the Mt. Hawley Policy, which is referred to as "controlling underlying insurance" in the North River Policy. The North River Policy provides, in relevant part, that it "does not apply to any liability arising out of or in any way related to . . . [a]ny liability excluded

by CONTROLLING UNDERLYING INSURANCE," *i.e.* the Mt. Hawley Policy. [ECF No. 23-1 at 30 & ECF No. 23-2 at 1].

### 4.     MRPT Seeks to Be Listed as a Named Insured

Raul Gonzalez testified at his deposition that he came to the MRPT property on September 17, 2013, the date of Augustave's injury. [ECF No. 38 at 12]. Two months later, on November 4, 2013, an employee of the Gonzalezes sent an email to CAFF with the subject "GL/Umbrella policy," asking CAFF to add a number of parties and entities as insureds under the Policy, including "Miami River Port Terminal, LLC." [ECF No. 93-7]. Amy Gonzalez, the Gonzalezes' daughter, asked CAFF to have MRPT added to the Policy. Teresa Garrido, an insurance agent at CAFF who was then servicing the Gonzalez account, testified that Amy "wanted to see if [CAFF] could get the company to go back . . . [t]o December 1, 2012." [ECF No. 96-1 at 28]. An insurance agent named Andrew McRae at the Westrope agency submitted the request to Mt. Hawley to make this change. Effective November 6, 2013, Mt. Hawley issued a change endorsement to list MRPT in the schedule as a named insured, but only on a prospective basis. Policy at 57; [ECF No. 44-3 at 2].

### 5.     Mt. Hawley's Response to the Underlying Action

Amy Gonzalez, an attorney licensed to practice law in Florida, serves as legal counsel to her parents. Following service of the Underlying Complaint on MRPT, Ms. Gonzalez tendered the Underlying Complaint to Mt. Hawley for defense and indemnity on behalf of MRPT. On March 11, 2014, William J. Dunn, Mt. Hawley's Director of Claims, sent a letter to Ms. Gonzalez advising her that Mt. Hawley was declining coverage for the claims alleged against MRPT in the Underlying Action and would not be providing a defense to MRPT in that action.

After Mt. Hawley's refusal, MRPT retained its own defense counsel to respond to the Underlying Complaint and retained other counsel to analyze whether Mt. Hawley's refusal to provide a defense and indemnity to MRPT in regard to that action was legally proper. That counsel,

Robert Major—who currently represents MRPT here—wrote to Dunn on April 7, 2014, requesting that Mt. Hawley reconsider its allegedly improper refusal to provide a defense to MRPT in the Underlying Action. On April 29, 2014, Dunn wrote a letter to Mr. Gonzalez advising him that Mt. Hawley would be providing a defense to MRPT in the Underlying Action under a reservation of rights.

**B.**   *Procedural History*

On June 26, 2015, Mt. Hawley filed this action, seeking a declaration, pursuant to 28 U.S.C. §§ 2201–02, that it has no duty to defend or indemnify MRPT in the Underlying Action [ECF No. 1]. MRPT answered on July 22, 2015 [ECF No. 5], and on November 24, 2015, filed an Amended Answer and Counterclaim against Mt. Hawley [ECF No. 32]. MRPT brings two counter-claims against Mt. Hawley: one alleging breach of the duty to defend, arising from Mt. Hawley's failure to immediately defend it in the Underlying Action, and one seeking reformation of the Policy to list MRPT as a "named insured" as of the starting date of the Policy.

On October 19, 2015, North River filed a Complaint in Intervention, seeking a declaration that if this Court declares that the Mt. Hawley Policy does not cover any liability of MRPT in connection with the Underlying Action, the Court also declares that the North River Policy also does not cover any liability of MRPT in connection with the Underlying Action [ECF No. 23]. MRPT filed its answer to North River's Complaint in Intervention on November 6, 2015 [ECF No. 25].

Five motions are now ripe for the Court's review:

(1)   Mt. Hawley's motion for summary judgment, filed on June 27, 2016 [ECF No. 37], seeking a declaration that it has no duty to defend or indemnify MRPT in the Under-lying Action;

(2)   North River's motion for summary judgment, filed on July 11, 2016 [ECF No. 62],

seeking a declaration, should this Court grant Mt. Hawley's motion, that it also has

no duty to defend or indemnify MRPT in the Underlying Action;

(3)   MRPT's motion for summary judgment, filed on October 25, 2016 [ECF No. 95],

seeking a declaration that Mt. Hawley is obligated to defend and indemnify MRPT

in the Underlying Action, and seeking summary judgment on its counterclaims

against Mt. Hawley;

(4)   Mt. Hawley's motion for summary judgment on MRPT's counterclaims, also filed

on October 25, 2016 [ECF No. 97]; and

(5)   MRPT's motion for continuance or stay, filed on September 21, 2016 [ECF No. 76],

seeking a continuance of the trial date or stay in this action pending resolution of the

trial in the Underlying Action, which is presently set on the state court's January 17,

2017, trial docket.

## II.    LEGAL STANDARD

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate

only if the movant shows that there is no genuine issue as to any material fact and the movant is

entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. —, 134 S. Ct. 1861, 1866

(2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)) (internal quotation marks omitted); *see also*

*Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). "By its very terms, this standard provides

that the mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no

*genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence,

could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v.*

*Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable

substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004) (citations and internal quotation marks omitted). "Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1138 (11th Cir. 2016).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

## III.   DISCUSSION

### A.   *Mt. Hawley and MRPT's Cross-Motions for Summary Judgment*

The parties agree that Florida law applies to the Policy and this dispute. Under Florida law, a liability insurer may have both a duty to defend and a duty to indemnify. *E.g.*, *Pa. Lumbermens Mut. Ins. Co. v. Ind. Lumbermens Mut. Ins. Co.*, 43 So. 3d 182, 186 (Fla. 4th DCA 2010).

#### 1.   Duty to Defend

Whether an insurer has a duty to defend "is determined by examining the allegations in the complaint filed against the insured." *Lime Tree Vill. Cmty. Club Ass'n v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1983) (citing *Nat'l Union Fire Ins. Co. v. Lenox Liquors Inc.*, 358 So. 2d 533, 536 (Fla. 1978)). "To determine whether [the insurer] ha[s] a duty to defend [the insured], the Court looks **only to the allegations in the Underlying Complaint and the terms of the Policy**." *Evanston Ins. Co. v. Haven S. Beach, LLC*, 152 F. Supp. 3d 1370, 1374 (S.D. Fla. 2015) (emphasis added). If the Underlying Complaint "alleges facts that fairly and potentially

bring the suit within policy coverage," the insurer has a duty to defend its insured. *Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442-43 (Fla. 2005) (citations and internal punctuation omitted). By contrast, "[w]here the allegations in the complaint show that no coverage exists or a policy exclusion applies, no duty to defend arises." *James River Ins. Co. v. Bodywell Nutrition, LLC*, 842 F. Supp. 2d 1351, 1354 (S.D. Fla. 2012) (citing *Posigian v. Am. Reliance Ins. Co. of N.J.*, 549 So. 2d 751, 753 (Fla. 3d DCA 1989)). "The allegations of the complaint govern the duty to defend even if they may be factually incorrect or without merit," *Sunshine Birds & Supplies, Inc. v. U.S. Fid. & Guar. Co.*, 696 So. 2d 907, 910 (Fla. 3d DCA 1997), but if those allegations leave any doubt as to the duty to defend, the question must be resolved in favor of the insured, *Trizec Props. Inc. v. Biltmore Const. Co.*, 767 F.2d 810, 811-12 (11th Cir. 1985).

The Court finds the decision by then–District Judge Adalberto Jordan in *Kenneth Cole Productions, Inc. v. Mid-Continent Casualty Co.*, 763 F. Supp. 2d 1331 (S.D. Fla. 2010), particularly instructive in resolving the question of whether Mt. Hawley has a duty to defend in the Underlying Action, and thus a lengthier discussion of that case is warranted. There, Kenneth Cole hired two companies—Cohen, Inc., and Jason Asbury Construction Services LLC—to do construction work at Dolphin Mall in Miami-Dade County. The contract controlling the construction work listed Cohen and Jason Asbury LLC as a joint venture. During the project, a Cohen employee negligently struck a sprinkler, which resulted in nearly $150,000 of water damage. Kenneth Cole paid Dolphin Mall for the water damage, and then sued Cohen and Jason Asbury LLC in New York state court seeking indemnification, citing an indemnification clause in the construction contract. Cohen, who was insured by Mid-Continent Casualty Co. for bodily injury and property damage caused by Cohen, presented the complaint to Mid-Continent. The insurance contract between Cohen and Mid-Continent stated: "No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is

not shown as a Named Insured in the Declarations." *Id.* at 1333. Based on this clause, and because the New York state complaint alleged that Cohen and Jason Asbury LLC were a joint venture, Mid-Continent refused to defend or cover liability arising from the incident. Cohen entered a judgment by confession and assigned to Kenneth Cole its rights to prosecute a declaratory judgment action against Mid-Continent, which Kenneth Cole brought in Florida court. At the summary judgment stage in the Florida action, Kenneth Cole argued that the court should not grant summary judgment in favor of Mid-Continent, despite the allegations in the New York complaint that Cohen and Jason Asbury LLC entered into a joint venture, because the question of whether a joint venture existed is factually intensive.

In granting Mid-Continent's motion for summary judgment on the duty to defend issue, Judge Jordan found that "[t]he allegations of the New York state complaint make clear that Cohen's liability to Kenneth Cole . . . arose from Cohen's (alleged) joint venture with Jason Asbury LLC." *Id.* at 1334-35. Judge Jordan noted that the complaint alleged that Kenneth Cole "retained [Jason Asbury LLC], in joint venture with Cohen"; that Kenneth Cole made a contract with Jason Asbury LLC "in joint venture with Cohen"; and that the contract that Jason Asbury LLC and Cohen entered into with Kenneth Cole as "joint venture partners" required indemnification for damages arising from work at Dolphin Mall. *Id.* at 1335. He continued:

> According to the New York state complaint, Cohen is liable to Kenneth Cole . . . because it entered, as part of a joint venture, an agreement promising to indemnify Kenneth Cole . . . . Because Kenneth Cole . . . seem[s] not to dispute that the insurance contract bars coverage arising from joint ventures, the allegations in the New York state complaint make clear that no coverage exists. So the allegations do not create a duty to defend.

*Id.*

This Court finds that the well-reasoned analysis of *Kenneth Cole* squarely applies to the facts of this case. In the Underlying Complaint, Augustave and Joseph allege the following:

- that P&L and MRPT have the same principal address—3300 N.W. North River Drive, Miami, Florida 33142. Underlying Complaint ¶¶ 6-7;

- that "[a]t all times material to this Complaint, Defendants [P&L] and [MRPT] held themselves out to be and were engaged in the business of arranging shipments of goods between Miami-Dade County, Florida and Haiti." *Id.* ¶ 8;

- that on the date of the incident, Augustave was "performing work at the property owned by [MRPT] and being run by [P&L] and [MRPT]." *Id.* ¶ 10;

- that on the date of the incident, "the cargo vessel *Sylvie* was moored at the wharf on the Miami River adjacent to Defendants [P&L] and [MRPT]'s principal office at 3300 N.W. North River Drive, Miami, Florida 3314 [sic]." *Id.* ¶ 11;

- that on the date of the incident, "***the Defendants*** agreed to provide labor and otherwise assist the *Sylvie* in the supervision" of loading and unloading containers from the ship to the dock. *Id.* ¶ 12 (emphasis added);

- that on the date of the incident, "***the Defendants*** employed a person named LESLIE PIERRE LOUIS, among others, as a supervisor." *Id.* ¶ 14 (emphasis added);

- that on the date of the incident, "an employee and/or agent of ***Defendants***, acting in the scope of his/her employment with ***Defendants***," negligently instructed Augustave to maneuver cargo, which caused Augustave's injuries. *Id.* ¶ 15 (emphasis added);

- that "[t]***he Defendants***, [P&L] and [MRPT], ***operated a joint venture*** to import and/or export goods to and from Haiti. *Id.* ¶ 16 (emphasis added);

- that "[t]***he Defendants*** negligently permitted the subject river terminal to be operated without reasonable safety precautions and standards." *Id.* ¶ 17 (emphasis added); and

- that on the date of the incident, Augustave was injured "as a result of ***Defendants'*** negligence." *Id.* ¶ 18 (emphasis added).

These allegations make clear, for present purposes, that Augustave and Joseph's injuries arose from a joint venture between MRPT and P&L. MRPT does not dispute that the Policy states that it does not insure joint ventures not listed as insured, nor does it dispute that no joint venture is listed on the Policy's declarations. Applying the reasoning of *Kenneth Cole*, the allegations of the Underlying Complaint do not create a duty to defend.

MRPT advances several arguments against this finding. The Court, however, finds none of them persuasive.

MRPT first contends that the Underlying Complaint "does not plead a single fact which would support the bald legal conclusion that MRPT was involved in a 'joint venture' with its tenant,

P&L." MRPT Mot. at 13. But the Court has just itself listed nearly a dozen allegations from the Underlying Complaint that support the conclusion that no coverage exists vis-à-vis the alleged joint venture between MRPT and P&L. The Court reiterates that the allegations of the Underlying Complaint "govern the duty to defend *even if they may be factually incorrect or without merit*." *Sunshine Birds & Supplies*, 696 So. 2d at 910. The factual allegations are what they are, and that is all the Court need concern itself with when undertaking its duty to defend analysis.[3]

Next, MRPT argues that because Mt. Hawley "seeks to avoid its duty to defend based on a policy exclusion," it "has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." *Id.* at 12 (quoting *Castillo v. State Farm Fla. Ins. Co.*, 971 So. 2d 820, 824 (Fla. 3d DCA 2007)); *see also id.* (citing *Acosta Inc. v. Nat'l Union Fire Ins. Co.*, 39 So. 3d 565, 574 (Fla. 1st DCA 2010)). But this case does not concern a policy *exclusion*; under the Policy here, no coverage exists for joint ventures "not shown as a Named Insured in the Declarations." Policy at 15. In addition, MRPT has provided no authority which supports the proposition that a complaint must *establish*, "unequivocally" or otherwise, that a joint venture exists for purposes of a duty to defend analysis.

MRPT also asserts that the Underlying Complaint is "ambiguous" and thus should be construed in favor of finding a duty to defend because it states separate negligence causes of action against MRPT and P&L. According to MRPT, because the Underlying Complaint brings claims against MRPT and P&L in separate counts, this "plainly" leads to the conclusion that the Under-

---

[3]   As such, MRPT's position that it was not in a joint venture with P&L, but rather that P&L was MRPT's commercial tenant on the subject property under an oral lease, is ultimately irrelevant to the Court's determination on this issue. Even if MRPT were able to prove that no joint venture existed between it and P&L, "an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the actual facts of the causes of action against the insured, the insured's version of the facts, or the insured's defenses." *Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.*, 771 So. 2d 579, 580-81 (Fla. 4th DCA 2000); *see also Kenneth Cole*, 763 F. Supp. 2d at 1334-36. The Underlying Complaint alleges that each act that gave rise to Augustave's (and Joseph's) injuries was an act taken *together* by MRPT and P&L, which operated together as a joint venture.

lying Complaint alleges two separate claims against MRPT, two separate claims against P&L, and a claim "against the 'joint venture' entity that allegedly existed." MRPT Reply at 2-3. In making this argument, MRPT relies on language from the Eleventh Circuit stating that where "the [under-lying] complaint alleges facts showing two or more grounds for liability, one being within the insurance coverage and the other not, the insurer is obligated to defend the entire suit." *Id.* at 3 (quoting *Lime Tree Village*, 980 F.2d at 1405). But unlike the facts in that case, the facts in this Underlying Complaint ***do not*** show some basis for imposing liability that falls within policy cover-age. The allegations here present a single, unambiguous picture: MRPT and P&L, as a joint ven-ture, hired a supervisor who, as an agent of that joint venture, acted in a negligent way which caused Augustave to suffer injury. "Where the alleged facts and legal theories do not fall within a policy's coverage, no duty to defend arises." *Mt. Hawley Ins. Co. v. Dania Distrib. Ctr., Ltd.*, 763 F. Supp. 2d 1359, 1364 (S.D. Fla. 2011), *aff'd*, 513 F. App'x 890 (11th Cir. 2013) (per curi-am). Augustave's Underlying Complaint clearly reflects that his ***entire claim*** is based on events that occurred as a result of the joint venture between MRPT and P&L, which is not covered by the Policy.

Moreover, under *Kenneth Cole*, an underlying complaint need not assert its claims solely against the joint venture for an insured to avoid a duty to defend. The underlying New York state complaint in *Kenneth Cole* was brought by two plaintiffs—Kenneth Cole Productions, Inc., and Cole South Beach, Inc.—against two defendants—Jason Asbury Construction Services, LLC, and Cohen, Inc. See Compl. at 1, *Kenneth Cole Prods., Inc. v. Jason Asbury Constr. Servs., LLC* (N.Y. Sup. Ct. Aug. 7, 2008). The plaintiffs asserted claims for indemnification, breach of contract, and negligence against the two defendants whom they alleged took part in a joint venture. *See id.* at 5-7. Yet the fact that the underlying complaint was brought against Cohen and Jason Asbury LLC as two separate entities—not against whatever joint venture they allegedly created together—in no

way impacted Judge Jordan's conclusion that the insurer had no duty to defend: because the complaint alleged that Cohen and Jason Asbury LLC entered into a joint venture, and because the insurance contract barred coverage arising from joint ventures, no coverage existed.

MRPT has given this Court no reason to depart from this analysis. While it is true that the underlying *Kenneth Cole* complaint asserted the three claims against both defendants together, rather than against the two defendants in separate counts (as Augustave did in the Underlying Complaint), the idiosyncrasies of New York–versus–Florida pleading practice is not sufficient justification for such a departure. MRPT has also provided no authority to support an argument that because a complaint is brought alleging injuries by a joint venture between two entities, the legal counts being pled against those two entities individually, in an effort to protect the plaintiff's right to recover, creates a duty to defend. The Underlying Complaint alleges that MRPT and P&L are in a joint venture. The Policy bars coverage arising from a joint venture not designated as a Named Insured. And the parties agree that no joint venture is designated as a Named Insured. No other conclusion than that there is no coverage is appropriate. Thus, the Court concludes that Mt. Hawley has no duty to defend in the Underlying Action.

### 2. Duty to Indemnify

While the duty to defend "is controlled by the allegations in the complaint against the insured," the duty to indemnify "is determined by the underlying facts of the case." *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1077 n.3 (Fla. 1998). This duty "is dependent upon the entry of a final judgment, settlement, or a final resolution of the underlying claim." *J.B.D. Const., Inc. v. Mid-Continent Cas. Co.*, 571 F. App'x 918, 927 (11th Cir. 2014) (per curiam).

A declaration as to the duty to indemnify is generally "premature unless there has been a resolution of the underlying claim," but the "exception to this general principle is if the court can determine that the allegations in the complaint could under no circumstances lead to a result which

would trigger the duty to indemnify." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001). In other words, "a court's determination that the insurer has no duty to defend **requires** a finding that there is no duty to indemnify." *Trailer Bridge, Inc. v. Illinois Nat'l Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011) (quoting *Phila. Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n*, 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009)); *see also Certain Interested Underwriters at Lloyd's, Lon. v. Equitable Life Ins. Co.*, 32 F. Supp. 2d 1226, 1230 & n.2 (collecting federal and state court cases applying the "principle that a finding of no duty to defend, as a matter of Florida law, necessarily includes a finding of no duty to indemnify").

Given the Court's conclusion that Mt. Hawley has no duty to defend in the Underlying Action, and given that the duty to indemnify "cannot exist if there is no duty to defend," *Well-Care of Fla., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 16 So. 3d 904, 906 (Fla 2d DCA 2009), the Court also concludes that Mt. Hawley has no duty to indemnify MRPT.

*   *   *

Accordingly, Mt. Hawley's motion for summary judgment is granted.[4] MRPT's motion for summary judgment is denied.

### B.   *North River's Motion for Summary Judgment*

The parties agree that, as North River is a "following form" excess carrier,[5] its entitlement to summary judgment rises and falls with Mt. Hawley's. *See* North River Mot. at 7-9; MRPT Opp'n to North River Mot. at 2-3. Specifically, MRPT states that it

---

[4]   Mt. Hawley's Complaint also includes a count to rescind the policy for misrepresentation in the application process, but Mt. Hawley has asserted that "resolution of the other bases for relief in [its] favor moots this issue." Mt. Hawley Opp'n to MRPT Mot. at 19. Thus, the Court need not address this claim.

[5]   "In essence, a following form policy incorporates and adopts the conditions of the policy of insurance immediately preceding it." *Admiral Ins. Co. v. Rockwell*, 515 So. 2d 246, 247 (Fla. 2d DCA 1987). "A 'following form' clause in a policy of excess coverage incorporates by reference all the terms and conditions of the underlying policy, except to the extent that the [excess] contract by its own terms specifically defines the scope of coverage differently, *i.e.*, via an exclusion." *In re HealthSouth Corp. Ins. Litig.*, 305 F. Supp. 2d 1253, 1282 (N.D. Ala. 2004) (emphasis removed) (citation and internal quotation marks omitted).

> acknowledges that if this Court were to determine that Mt. Hawley is entitled to summary judgment pursuant to the arguments set forth in Mt. Hawley's motion seeking such relief, then [North River] would be similarly entitled to summary judgment, since [North River]'s excess liability insurance policy, which provides coverage to the same insureds as does the Mt. Hawley policy, follows the form of the Mt. Hawley policy, and incorporates the same terms and conditions as the Mt. Hawley policy.

MRPT Opp'n to North River Mot. at 2-3 (citation omitted). Given this acknowledgment, North River's motion for summary judgment is also granted.

### C.   *MRPT's Counterclaims*

#### 1.   **Breach of Contract**

In Count I of its Counterclaim, MRPT brings a claim for breach of contract, seeking reimbursement of legal fees expended for the period of time between when the Underlying Action was commenced and when Mt. Hawley undertook MRPT's defense under a reservation of rights. But because the Court has found that no duty to defend existed, there can be no breach of contract arising from Mt. Hawley's failure to defend. Mt. Hawley's motion for summary judgment as to this Count is therefore granted.

#### 2.   **Reformation**

In Count II of its Counterclaim, MRPT seeks to have this Court reform the Policy "to express the parties' intent that MRPT be listed in the Schedule as a 'named insured' as of December 1, 2012, which is the effective date of the policy." [ECF No. 32 at 13]. The parties' intent, MRPT alleges, was that the schedule to the Policy "include, as named insureds, all business entities in which Raul and Lucrecia Gonzalez have an ownership interest, including Miami River Port Terminal, LLC." [*Id.* ¶ 97].

"Reformation is an equitable remedy which 'acts to correct an error not in the parties' agreement but in the writing which constitutes the embodiment of that agreement.'" *Kolski ex rel. Kolski v. Kolski*, 731 So. 2d 169, 173 (Fla. 3d DCA 1999) (quoting *Smith v. Royal Automotive*

*Grp., Inc.*, 675 So. 2d 144, 150-51 (Fla. 5th DCA 1996)). "[I]n reforming a written instrument," the court "in no way alters the agreement of the parties. Instead, the reformation only corrects the defective written instrument so that it accurately reflects the true terms of the agreement actually reached." *Providence Sq. Ass'n v. Biancardi*, 507 So. 2d 1366, 1369-70 (Fla. 1987). "Florida courts have sharply delimited a narrow range of circumstances that will support reformation: fraud, inequitable conduct, accident, inadvertence, and"—the ground sought here by MRPT—"mutual mistake." *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 8 F.3d 760, 765 (11th Cir. 1993). In this context, "[a] mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument." *Fed. Ins. Co. v. Donovan Indus., Inc.*, 75 So. 3d 812, 815 (Fla. 2d DCA 2011) (citation omitted). "[T]he mutual mistake must be determined to have existed at the time the contract was reduced to writing." *Canal Ins. Co. v. Hartford Ins. Co.*, 415 So. 2d 1295, 1297 (Fla. 1st DCA 1982). Reformation is generally not an available remedy where only a unilateral mistake is present. *Feldman v. Kritch*, 824 So. 2d 274, 277 (Fla. 4th DCA 2002).[6]

An insurance policy "as issued and accepted is prima facie the contract of the parties." *Fidelity Phenix Fire Ins. Co. of N.Y. v. Hilliard*, 62 So. 585, 586 (Fla. 1913). "Florida courts have said again and again that insurance contracts must be construed in accordance with the plain language of the policy," *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 735 (Fla. 2002), and "[a] court should read an insurance policy as a whole, and endeavor to give each provision its full meaning and operative effect," *Anderson v. Auto-Owners Ins. Co.*, 172 F.3d 767, 769 (11th Cir. 1999), so the Court begins its analysis with the language of the Policy. The Policy's Named Insured and Location Supplementary Schedule designates both "Named Insureds" and "Covered

---

[6]  An exception to this general rule permits reformation in cases where a unilateral mistake by one party to an agreement is coupled with the inequitable conduct of the other party. *Providence Sq. Ass'n*, 507 So. 2d 1366, 1372 n.3.

Locations." In that schedule, MRPT is listed as a Covered Location (as "Miami River Port Terminal, Miami FL"), but not as a Named Insured. The term "Covered Locations" is not used elsewhere in the Policy, but the Policy *extensively* describes who or what qualifies as a "Named Insured," *see* Policy at 14-15; *see also id.* at 6 ("Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy."), and states that "[n]o person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations," *id.* at 15. An endorsement to the Policy titled "Limitation of Coverage to Designated Premises or Project" (the "Designated Premises Endorsement") states that the Policy "applies only to 'bodily injury,' 'property damage,' 'personal and advertising injury' and medical expenses arising out of . . . [t]he ownership, maintenance or use of the premises . . . ." *Id.* at 27.

A plain reading of the Policy would be to read the Designated Premises Endorsement together with the Named Insured and Location Supplementary Schedule to provide that the insurance coverage afforded by the Policy—to Named Insureds—applies only to bodily injury, property damage, personal and advertising injury, and medical expenses arising out of the explicitly listed *Named Insureds'* ownership, maintenance, or use of the Covered Locations. And because Florida courts analyzing reformation claims employ a "strong presumption" that an insurance policy "correctly expresses the intention of the parties," *Niagara Fire Ins. Co. v. Allied Elec. Co.*, 319 So. 2d 594, 595 (Fla. 3d DCA 1975), the Court finds that the intention of Mt. Hawley and MRPT, gleaned from this plain reading, is that the Policy *not* provide coverage to MRPT for bodily injury suffered at 3300 N.W. North River Drive simply by virtue of MRPT's ownership of that property

because MRPT is not listed as a Named Insured.[7]

This "strong presumption" can be overcome only by clear and convincing evidence that a different contract was entered into than the one reduced to writing. *Id.*; *see also Cont'l Cas. Co. v. City of Ocala*, 127 So. 894 (Fla. 1930); *Fid. Phenix*, 62 So. at 586 (holding that a party seeking reformation must "establish the fact by such evidence as to show conclusively that a mistake had been made and to satisfy the court of such mistake beyond a reasonable doubt"). The burden thus falls to MRPT to provide clear and convincing evidence that it entered a different contract with Mt. Hawley than the Policy that is presently before the Court, which provides insurance coverage to the ***entity*** Miami River Port Terminal, LLC, not "Miami River Port Terminal," "3300 N.W. North River Drive, Miami, FL," some combination of the two, or some variation thereof.

MRPT has not done so. It contends that the Designated Premises Endorsement's application of the Policy to injury arising out of "[t]he ***ownership*** . . . of the premises," Policy at 27, is "a crystal clear indication that the policy's liability coverage was intended to extend to the 'owner' of each of the scheduled premises (which necessarily included the owner of the Miami River Port Terminal premises, since it was listed on both successive policies' Schedules)," MRPT Opp'n to Mt. Hawley Mot. at 4-5. MRPT's position, in other words, is that because it owned the premises known as Miami River Port Terminal, and because the Designated Premises Endorsement purports to apply the Policy to injury arising out of the ownership of Covered Locations (including Miami River Port Terminal), the parties' clear intent is that MRPT be covered under the Policy as a Named Insured.

---

[7]   While it is true that ambiguous provisions in insurance policies—where language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage—are to be liberally construed in favor of the insured and against the insurer, *see Garcia v. Fed. Ins. Co.*, 969 So. 2d 288 (Fla. 2007), *Dickson v. Economy Premier Assur. Co.*, 36 So. 3d 789 (Fla. 5th DCA 2010), this "rule of adverse construction" is a "secondary rule of interpretation" or a "rule of last resort," which should not be used if the parties' intent can otherwise be determined from a plain reading of the policy, *Emerald Pointe Prop. Owners Ass'n v. Commercial Constr. Indus., Inc.*, 978 So. 2d 873, 878 n.1 (Fla 4th DCA 2008). The Court ***has*** determined the parties' intent based on a plain reading of the Policy, so resorting to an interpretation under the rule of adverse construction is unnecessary.

The Court disagrees. To adopt MRPT's interpretation of the Designated Premises Endorsement would be to completely elide the distinction between "Named Insureds" and "Covered Locations," by, in essence, transforming a Covered Location *into* a Named Insured. This interpretation would fail to give each provision of the Policy its full meaning and operative effect, as all provisions defining or describing "Named Insureds"—as well as Mt. Hawley's conscious decision to separate that category from the category of "Covered Locations"—would be rendered irrelevant. It would also contravene well-settled law that "courts must not construe insurance policy provisions in isolation." *Office Depot, Inc. v. Nat'l Union Fire Ins. Co.*, 734 F. Supp. 2d 1304, 1314 (S.D. Fla. 2010) (citing *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29 (Fla. 2000)); *see also Travelers Ins. Co. v. Bartoszewicz*, 404 So. 2d 1053, 1054-55 (Fla. 1981) (explaining that "Named Insured" has a restrictive meaning under Florida law); *American States Ins. Co. v. Kelley*, 446 So. 2d 1085, 1086 (Fla. 4th DCA 1984) (same). Given that no provision in the Policy expands the meaning of "Named Insured" to encompass all separately designated "Covered Locations," the Court refuses to expand it based on MRPT's interpretation of a single passage on a single page of the Policy.

Furthermore, it is apparent from a review of the undisputed facts and evidence, that after Mrs. Gonzalez asked CAFF, the Gonzalezes' insurance agent, to add MRPT *and* its location to their then-existing insurance policy with Essex Insurance Company in March 2010, the Gonzalezes, through CAFF, sent application forms to insurance companies over several years (for policy coverage beginning in December 2010, December 2011, and December 2012), none of which listed MRPT among the numerous individuals and entities to be insured. And none of the insurance policies corresponding to those applications listed MRPT as a Named Insured. It is undisputed that the first time Mt. Hawley learned that "Miami River Port Terminal, LLC" existed was nearly two months *following* the incident which caused Augustave's injury when the Gonzalezes, through

22

their insurance agent, sought to have MRPT retroactively added to the list of named insureds covered by the Policy. Mt. Hawley could not have intended to list as a Named Insured an entity it was unaware of until after the underlying incident occurred. As a result, the Court finds that the Gonzalezes' (or their insurance agent's) repeated failure to list MRPT as a named insured on their insurance applications is, therefore, their own unilateral mistake.[8]

*   *   *

There is no "clerical mistake" or "scrivener's error" at issue here. Whether or not it was the Gonzalezes' intent to include MRPT as a Named Insured in the Policy is immaterial, because it was clearly not Mt. Hawley's. "When an instrument is written as one party understands it, and not as the other party understands it, there is no ground for reform." *Horne v. J.C. Turner Cypress Lumber Co.*, 45 So. 1016, 1018 (Fla. 1908). Accordingly, the Court concludes that the Gonzalezes' unilateral mistake—repeated over the course of three years—does not give rise to reformation. Mt. Hawley's motion for summary judgment on Count II of the Counterclaim is granted.[9]

---

[8] MRPT also argues that Mt. Hawley mistakenly believed that the property at 3300 N.W. North River Drive was owned by the Gonzaleses personally, rather than through MRPT, based on erroneous information supplied to RRI's inspector in January 2012 by Ryan Gonzalez, who MRPT states was a P&L employee. MRPT contends that this "mistake" was incorporated into the Policy when it was implemented in December 2012. In making this argument, MRPT seems to misapprehend what constitutes a "mistake" for purposes of reformation. As stated previously, a mutual mistake is present "when the parties agree to one thing and then . . . express something different in the written instrument." *Fed. Ins. Co.*, 75 So. 3d at 815. A "mistake" in this context does not mean "an incorrect fact." MRPT's discussion of Mt. Hawley's purported mistaken belief as to the ownership of the 3300 N.W. North River Drive property cannot be considered a "mutual mistake," because MRPT has provided no evidence that the parties *agreed* that MRPT owned the property but that Mt. Hawley expressed something other than that agreement in the Policy. Even so, Mt. Hawley is correct that "[a]n insurer is entitled, as a matter of law, to rely upon the accuracy of the information contained in an application and has no duty to make additional inquiry." *Indep. Fire Ins. Co. v. Arvidson*, 604 So. 2d 854, 856 (Fla. 4th DCA 1992). Mt. Hawley had no independent duty to verify information such as the ownership of the property at that address in the process of considering the Gonzalezes' insurance application. That duty falls to the Gonzalezes as the prospective insured. If MRPT did not think it important enough to send one of its managing members or one of its own employees to meet the inspector for the purposes of obtaining insurance coverage through Mt. Hawley, it cannot now blame Mt. Hawley for accepting the information given to its inspector by the employee on the premises who met with and accompanied the inspector during his visit.

[9] Given that the Court has ruled in Mt. Hawley's favor on all issues, MRPT's motion seeking continuance or stay has been rendered moot.

IV.   **CONCLUSION**

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

(1)   Plaintiff/Counter-defendant Mt. Hawley Insurance Company's Motion for Summary Judgment [ECF No. 37] is **GRANTED**. The Clerk of Court shall **ENTER JUDGMENT IN FAVOR OF** Plaintiff Mt. Hawley Insurance Company and **AGAINST** Defendant Miami River Port Terminal, LLC, declaring that under the Commercial General Liability Policy (Policy No. MGL0178574), Mt. Hawley Insurance Company owes no duty to defend or indemnify Miami River Port Terminal, LLC, in the lawsuit currently pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, *Wilson Augustave and Deselyn Joseph v. P&L Cargo Services, Inc., and Miami River Port Terminal, LLC*, Case No. 14-01868 CA 21;

(2)   Plaintiff-Intervenor North River Insurance Company's Motion for Summary Judgment [ECF No. 62] is **GRANTED**. The Clerk of Court shall **ENTER JUDGMENT IN FAVOR OF** Plaintiff-Intervenor North River Insurance Company and **AGAINST** Defendant Miami River Port Terminal, LLC, declaring that under the Commercial General Liability Policy (Policy No. MGL0178574), North River Insurance Company owes no duty to defend or indemnify Miami River Port Terminal, LLC, in the lawsuit currently pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, *Wilson Augustave and Deselyn Joseph v. P&L Cargo Services, Inc., and Miami River Port Terminal, LLC*, Case No. 14-01868 CA 21;

(3)   Plaintiff/Counter-defendant Mt. Hawley Insurance Company's Motion for Summary Judgment on Miami River Port Terminal, LLC's Counterclaims [ECF No. 97] is **GRANTED**. The Clerk of Court shall **ENTER JUDGMENT IN FAVOR OF** Plaintiff/Counter-defendant Mt. Hawley Insurance Company and **AGAINST**

Defendant/Counter-plaintiff Miami River Port Terminal, LLC, on Counts I and II of

the Amended Answer and Counterclaim [ECF No. 32];

(4)    Defendant/Counter-plaintiff Miami River Port Terminal, LLC's Motion for Summary

Judgment [ECF No. 95] is **DENIED**; and

(5)    Defendant/Counter-plaintiff Miami River Port Terminal, LLC's Motion for Contin-

uance or Stay [ECF No. 76] is **DENIED AS MOOT**.

This action is **CLOSED** and all other pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 6th day of January, 2017.

_____

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE